Civil Action No. 16-cv-03143-CMA-KLM

BETSY A. HAY,

      Plaintiff,

v.

FAMILY TREE, INC., a 501(c)(3) non-profit organization conducting business in Colorado,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Second Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)** [#31][1] (the "Motion"). Plaintiff filed an Amended Response [#39] in opposition to the Motion, and Defendant filed a Reply [#48]. The Motion has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). *See* [#33]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. Based on the following, the Court respectfully **recommends** that the Motion [#31] be **GRANTED in part and DENIED in part**.

## I. Background

---

    [1] "[#31]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Plaintiff alleges the following facts as the basis for her claims.[2]  Plaintiff has worked as a social worker for more than twenty years and earned a master's degree in Social Work in 1985 and a Ph.D in Social Work in 2012.  *Second Am. Compl.* [#13] ¶¶ 12-13.  Plaintiff worked for Defendant, a non-profit organization that provides "multiple issue family assistance," from 2007 until November 15, 2014.  *Id.* 5, 14-15.  Plaintiff "always received adequate performance evaluations." *Id.* ¶ 16.  In June 2014, Plaintiff was informed that the contracts for the programs she worked in, the Arapahoe County Kinship Family Sustainability Program and Arapahoe County Military Family Assistance Program, would end on August 30, 2014. Id. ¶¶ 17-18.  During the last six months of her employment, and until February 6, 2015, Plaintiff "sought transfers and applied for replacement jobs" with Defendant.  *Id.* ¶ 19.  Plaintiff was "laid off from permanent employment on August 30, 2014."  *Id.* ¶ 20.

On August 31, 2014, Plaintiff was assigned temporary, part-time employment that was split between two positions.  *Id.* ¶ 23.  Plaintiff spent three-quarters of her time with the Supportive Services for Veterans' Families program ("SSVF") and one-quarter of her time with the "Adams County Kinship TANF Stable Families Program" ("Adams County Kinship Program").  *Id.*  While Plaintiff was working with SSVF, she "asked to be transferred into" a full-time position that had opened.  *Id.* ¶ ¶ 34-35.  After being encouraged to do so, Plaintiff submitted an application for the full-time SSVF position on approximately September 2, 2014.  *Id.* ¶¶ 42-43.  Other employees whose positions had ended when Defendant's contracts had been "reduced" or ended had been transferred to the SSVF

[2]  All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff.  *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

program in the past. *Id.* ¶¶ 38-41. However, on October 31, 2014, Plaintiff was told that someone else had been hired for the full-time position and that her temporary, part-time position with SSVF would end. *Id.* ¶ 44. The woman who was hired for the full-time position was "much younger." *Id.* ¶ 46. Additionally, Plaintiff's assignment to the Adams County Kinship Program ended because Plaintiff was told that an employee who had been working part-time would be returning to work full-time. *Id.* ¶ 31. However, Plaintiff alleges that this employee did not return to work full-time. *Id.* ¶ 32. All of Plaintiff's temporary employment ended on approximately November 15, 2014. *Id.* ¶ 29. At the time of her "separation from employment," Plaintiff was sixty-eight years of age, and she was sixty-nine when she was "not hired for a position," as explained in more detail below. *Id.* ¶ 3.

In addition to the SSVF position, Plaintiff applied for and "tried to transfer" to "one of three open positions" in the "SafeCare Program." *Id.* ¶¶ 48-49. Plaintiff was told by a member of Defendant's Human Resources Department that she could not transfer into the SafeCare positions because Defendant "had a policy of not transferring employees when they are laid off." *Id.* ¶ 50. However, Plaintiff contends that "[y]ounger employees are routinely transferred to new positions when they are laid off." *Id.* ¶ 53. She provides examples such as, among others, "Sherry Stedman, a younger and less experienced individual, was automatically transferred to an SSVF position when she was laid off from the Arapahoe County Kinship position in approximately 2011." *Id.* ¶¶ 54-59. Plaintiff was interviewed by Amy Hixon[3] ("Hixon") for the SafeCare positions, but she was ultimately told that "she was not selected for one of the three SafeCare positions because [Defendant]

---

[3] Plaintiff does not provide additional details about Amy Hixon or specify what position she held with Defendant.

wanted a 'green' employee with less experience" and that Hixon "did not think [Plaintiff] would follow the strict new service model adopted in the SafeCare Program because she was so experienced." *Id.* ¶¶ 62-64.

Subsequently, after not being hired for a position with the SafeCare Program, "Hixon told Plaintiff to apply to a case manager position with the CFRT program" because "she was a good fit for that job." *Id.* ¶ 66. Hixon told Plaintiff that she had "already interviewed" for the CFRT position and would let her know when it came open." *Id.* ¶ 67. Plaintiff did not officially submit an application for the position and was not informed when it became open for applicants, but the position was ultimately given to "Amy Halvorson, a younger less experienced employee who did not have to apply for the position." *Id.* ¶ 70-73.

Lastly, Plaintiff applied for a position with the Douglas County Kinship Program on approximately February 9, 2015, and received a message from Human Resources stating that she "would be contacted if her qualifications met their needs." *Id.* ¶¶ 86-92. Plaintiff was not contacted for an interview and "Defendant has stated that on February 6, 2014, the Douglas County Kinship Program was given to a younger and less qualified applicant, Michelle Johnson." *Id.* ¶¶ 96-97.

Key to this dispute, Plaintiff asserts that Defendant "had an official policy well known to employees that they would retain employees in the face of lay-offs and maintain diversity in employment, through values identified in the Kaleidoscope program." *Id.* ¶ 24. This "value" was identified in "Kaleidoscope documents" and was "implemented by a policy and practice of retaining employees who are in good standing by transferring them into other jobs instead of laying them off when contracts ended." *Id.* ¶ 25. Plaintiff contends that "numerous younger employees were given an opportunity to be rehired after they were laid

off" and specifically names five employees who were "re-hired." *Id.* ¶¶ 100(a)-(e). Further, Plaintiff was told by her manager, Dennis Desparrois in June 2014, that "everyone who wanted to continue working at Family Tree after a lay-off had been able to do so." *Id.* ¶ 74.

In Claim One, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act ("ADEA") by "refusing to transfer or hire Plaintiff into jobs for which she applied or expressed interest and for which she was best qualified." *Id.* ¶¶ 116-123. In Claim Two, Plaintiff alleges that the unspecified Kaleidoscope program documents constitute an express employment contract that Defendant breached, and that "statements made by management officials" also constitute express contracts that Defendant also breached. *Id.* ¶¶ 124-128. In the alternative, Plaintiff alleges that the unspecified Kaleidoscope program documents and the "statements by management officials" constitute implied contracts breached by Defendant. *Id.* ¶¶ 138-150. In Claim Three, Plaintiff alleges promissory estoppel, asserting that she "expected continued employment" and "relied to her detriment on Defendant's policy of retention." *Id.* ¶¶ 151-162.

The Motion [#31] seeks dismissal of Plaintiff's Second Amended Complaint [#13] pursuant to Fed. R. Civ. P. 12(b)(6). Defendant contends that dismissal of these claims is appropriate for the following reasons: (1) Plaintiff has failed to allege that she gave special consideration in exchange for a contract for permanent employment; (2) Plaintiff has not stated a plausible ADEA claim because her allegations are conclusory; and (3) the allegations Plaintiff does provide to support her ADEA claim fail to allege that she was properly qualified for the positions for which she applied. *Motion* [#31] at 6-14.

## II. Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.  Breach of Express Employment Contract**

Interpretation of a contract is a matter of state law. *DIRECTV, Inc. v. Imburgia*, 136 U.S. 463 (2015). The parties appear to agree that Colorado law controls here. *See Motion* [#31] at 2, 6; *Response* [#39] at 8. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

Plaintiff alleges that Defendant breached an employment contract, Kaleidoscope, and additional contracts that were created by statements of management officials when she was "laid off from permanent employment." *Second Am. Compl.* ¶¶ 20, 134. Plaintiff contends that Defendant's Kaleidoscope program consitutted an employment contract that promulgated "an official policy well known to employees that they would retain employees in the face of lay-offs and maintain diversity in employment, through values identified in the Kaleidoscope program." *Id.* ¶ 24. Plaintiff alleges that by "refusing to transfer or hire Plaintiff in the numerous openings for which she was highly qualified after the Arapahoe County Kinship Program contract ended," Defendant breached the employment contract. *Id.* ¶ 134. Specifically, Plaintiff contends that this "value" was implemented by "a policy and practice of retaining employees who are in good standing by transferring them or hiring

them into other jobs instead of laying them off when contracts ended." *Id.* ¶ 25.

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law and should be dismissed because: (1) "Plaintiff's at-will employment contract expressly prohibits any modifications unless in writing, signed by the President and the employee"; and (2) "Plaintiff has failed to allege special consideration." *Motion* [#31] at 6. In response, Plaintiff argues that she "does not have to show special consideration" because special consideration is only required when there is no contract and here, "there is a contract for retention" and "Kaleidoscope was a policy contracting for retention and job security after lay-offs." *Response* [#39] at 9.

### 1.    Contract at Issue

With regard to Defendant's argument that Plaintiff's breach of contract claim fails due to her "at-will employment contract," Defendant has attached a document to the Motion [#31] that it contends is an employment contract between Plaintiff and Defendant. *See Exhibit A* [#31-1] at 2. However, the one-page document is not labeled and appears to be an acknowledgment that Plaintiff received an employee handbook. *Id.* ("I have received a copy of Family Tree's employee handbook dated 08/16/06."). Defendant argues that Plaintiff did not comply with the terms of the document and that her breach of contract claim therefore fails. *See Motion* [#31] at 9. Plaintiff contends that the employment contract included by Defendant in its Motion [#31] is not the contract at issue in her claims; rather, she asserts that the Kaleidoscope program is the contract at issue. *See Response* [#39] at 10. This argument is addressed further below.

In ruling on a Motion to Dismiss, the Court, without converting it into a motion for summary judgment, "may consider documents referred to in the complaint if the documents

are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Stanton v. Encompass Indem. Co.*, 12-cv-00801-PAB-KLM, 2012 WL 4466555, at *2 (D. Colo. Sept. 27, 2012) (internal quotation marks omitted) (citing *Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Plaintiff has not referred to the document provided by Defendant in her Second Amended Complaint and disputes that it is the contract at issue. Thus, the Court may not consider it at this stage of the litigation. *Cf. Stanton*, 2012 WL 4466555, at *3 (explaining that because the plaintiff had not "disputed the authenticity of or otherwise objected to the Court's consideration of [documents]," the Court could consider emails attached to the defendant's motion).

Because the Court will not consider the document attached to the Motion [#31], Defendant's argument regarding its contents fails.

### 2. Whether Plaintiff's Employment was Permanent

As an initial matter, Plaintiff provides no explanation as to what the Kaleidoscope "program" is, how it operated, to whom it applied, or whether it was a written policy. While she refers to "Kaleidoscope documents" she neither provides copies of them nor any further information regarding the statements or promises they allegedly contain. Plaintiff's vague allegation that the Kaleidoscope "program," or some documents related to it, contain a promise of permanent employment is devoid of sufficient facts to state a plausible claim for relief. *See Shero*, 510 F.3d at 1200 (explaining that to survive a motion to dismiss on Rule 12(b)(6) grounds, the complaint must "state a claim for relief that is plausible on its face") (internal quotation marks omitted).

Even if Plaintiff sufficiently alleged the existence of an express contract, Defendant argues that Plaintiff's breach of contract claim fails because Plaintiff's "Second Amended

Complaint is devoid of any allegations that Plaintiff provided special consideration to [Defendant]." *See Motion* [#31] at 6-7. Plaintiff argues that she "did not have to give special consideration to rely on the retention and transfer policy published in Kaleidoscope." *Response* [#39] at 8-9.

Pursuant to Colorado law, "[a]bsent an express contract providing otherwise, Colorado law presumes the employment relationship to be terminable at will by either party without liability." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (quoting *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243 (Colo. App. 2006). Further, "in the absence of special consideration or an express stipulation as to the length of employment, employment for an indefinite term presumptively creates an at-will employment relationship that is terminable at any time by either party." *DeFranco v. Storage Tech. Corp.*, 622 F.3d 1296, 1305 (10th Cir. 2010). "Special consideration is consideration other than services incident to the employee's employment." *Id.* (explaining that examples of special consideration include "accepting a reduced salary, releasing claims against the employer, or agreeing to purchase property from the employer") (internal quotation marks omitted).

Plaintiff alleges that the employment contract breached by Defendant was the "Kaleidoscope program." *See Second Am. Compl.* [#13] ¶ 125. Although Plaintiff further contends that she was "laid off from permanent employment," Plaintiff does not specifically allege that she was employed pursuant to a contract for a definite term. Hence, it is apparent that Plaintiff contends that her express employment contract pursuant to Kaleidoscope was for an indefinite term. Accordingly, the Court looks to whether Plaintiff has plausibly asserted that permanent employment was created by the Kaleidoscope program and either (1) special consideration or (2) an express stipulation as to the length

of employment.  *See DeFranco*, 622 F.3d at 1305.

Plaintiff argues that she is not required to show special consideration because Kaleidoscope was a contract for retention.  *See Response* [#39] at 8-9.  Further Plaintiff contends that she "did not have to give special consideration to rely on the retention and transfer policy in Kaleidoscope."  *Id.*  Plaintiff relies on *Pickell v. Arizona Components Co.*, 931 P.2d 1184, 1186 (Colo. 1997), to argue that "no special consideration was required where there is a contract or a promise; and, [sic] there is a contract for a specific length of time even without a stated length of time when the employer uses language that promises a job that would 'endure over time' and similar language."  *Response* [#39] at 9.  In *Pickell*, however, the trial court found that a contract existed because the defendant had "promised [Plaintiff] a job for a definite length of time," which rebutted the presumption that the employment was "terminable at any time by either party."  931 P.2d at 1186.

There is no similar allegation of a promise of employment for a definite length of time here, aside from Plaintiff's amorphous reference to "permanent employment."  Plaintiff does not allege that any of the "statements by management officials" expressly stipulated the length of her employment or that the Kaleidoscope program did so; rather she argues that the Kaleidoscope program contained a statement promising "to retain her as an employee as long as she continued to perform her job adequately."  *See Second Am. Compl.* [#13] ¶ 125; *see also Justice v. Stanley Aviation Corp.*, 530 P.2d 984, 986 (Colo. App. 1974) (finding that there was no specific term of employment stated in the plaintiff's employment contract and thus, the contract was "for an indefinite term and therefore terminable at will at any time"); *Snoey v. Advanced Forming Tech., Inc.*, 844 F. Supp. 1394, 1398-99 (D. Colo. 1994) (finding that the plaintiff's ADEA claim failed because he had "not pointed to

-11-

any statements indicating that he was hired for a specific term or on a permanent basis [and] [t]he statements upon which he relie[d] are too ambiguous and indefinite to be considered offers of employment for a specific term").  In *Allen v. Dayco Prods., Inc.*, 758 F. Supp. 630, 632-33 (D. Colo. 1990), the Court explained that an employer's statement that the employee "could have the job as long as he wanted" did not "mention duration or a termination date."  Further, it explained that the "effect of such a statement, if any, would be the creation of permanent employment."  *Id.*  However, because the plaintiff in *Allen* had not asserted that any special consideration was given, "the arrangement must be termed employment at will."  *Id.*  Similarly here, the statement Plaintiff relies on from the "Kaleidoscope program" cannot be read to be a fixed period of employment because it does not mention duration or a termination date.

Because Plaintiff has not asserted that there was special consideration or "an express stipulation as to the length of employment," her breach of contract claim fails to adequately allege that she had a contract for permanent employment rather than the presumptive at-will employment under Colorado law.  *See DeFranco*, 622 F.3d at 1305; *see also Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1383 (Colo. App. 1986) ("'In the absence of special consideration or an express stipulation as to the duration of employment, a contract for permanent employment is no more than an indefinite general hiring terminable at the will of either party.'") (quoting *Justice v. Stanley Aviation Corp.*, 530 P.2d 984, 986 (Colo. App. 1974)); *see also Roberts v. Conoco, Inc.*, 717 F. Supp. 724, 726 (D. Colo. 1989) (finding that the plaintiff's breach of contract claim failed because he did not show special consideration or an express stipulation and because he "understood that his employment with [Defendant] was contingent on satisfactory performance").

Thus, Plaintiff has failed to adequately allege a breach of express contract claim. *See Smith v. Starwood Aspen Realty, LLC*, No. 12-cv-00884-CMA-KLM, 2013 WL 426790, at *3 (D. Colo. Jan. 11, 2013) ("A contract terminable at will is one that may be terminated at any time without legal consequence; that is, there is no breach if the contract is terminated.") (quoting *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1197 (Colo. App. 2009)). Accordingly, the Court respectfully **recommends** that Plaintiff's breach of contract claim be **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**B.     Breach of Implied Employment Contract**

Plaintiff argues in the alternative that "[t]o the extent that Kaleidoscope is not a written contract, it is an implied contract." *Second Am. Compl.* [#13] at 16. Plaintiff also alleges that "[s]tatements by management officials that they would consider her and save her applications for openings they expected in the future" and that "all employees who were laid off were able to remain at Family Tree in other jobs" create implied employment contracts. *Id.* ¶¶ 141-42. Defendant argues that Plaintiff's implied breach of contract claim fails as a matter of law and should be dismissed because: (1) Plaintiff failed to allege that she provided special consideration; (2) "the alleged generalized statements of management concerning employment at Family Tree fail to amount to a contract for permanent employment"; and (3) the claim is barred by Plaintiff's at-will employment contract. *Motion* [#31] at 10.

In order to establish breach of an implied contract, a plaintiff must first show that

through the employer's statements "the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Winkler v. Bowlmor AMF*, 207 F. Supp. 3d 1185, 1190 (D. Colo. 2016) (citing *Continental Air Lines v. Keenan*, 731 P.2d 708, 711 (Colo. 1987) (internal quotation marks and brackets omitted)). Second, a plaintiff must show "that his initial or continued employment constituted acceptance of and consideration for those procedures." *Continental Air Lines*, 731 P.2d at 711). "[W]hile the existence of an implied contract is normally a factual inquiry for the jury . . . the issue may be decided as a matter of law if the alleged promises are nothing more than 'vague assurances.'" *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (quoting *Dupree v. U.S. Postal Serv.*, 956 F.2d 219, 222 (10th Cir. 1992).

With respect to Plaintiff's allegation that the Kaleidoscope "program" constituted an implied contract, Plaintiff's sparse allegations regarding what the program is, who created it and why, how it operates, whether it was written, etc., lack the necessary specificity. *See Second Am. Compl.* [#13] ¶¶ 24-25. Plaintiff has not sufficiently alleged the Kaleidoscope program contained promises that she could have reasonably interpreted to guarantee permanent employment. Additionally, the Second Amended Complaint [#13] lacks specificity regarding how the "policy and practice of retaining employees" was communicated to Plaintiff by the Kaleidoscope "program." *See Geras*, 638 F.3d at 1315 ("[T]he alleged promise must be 'sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms.'") (quoting *Soderlun*, 944 P.2d at 620). Thus, Plaintiff has not sufficiently alleged that the

Kaleidoscope "program" can be construed as a legally binding promise. *See Steele v. Stallion Rockies Ltd.*, 106 F. Supp. 3d 1205, 1212 (D. Colo. 2015) ("A promise that forms the basis of an enforceable contract must be sufficiently specific to provide a basis for determining the existence of a breach and for giving an appropriate remedy.") (internal quotation marks omitted).

With respect to Plaintiff's allegation that her manager's statement that "everyone who wanted to continue working at Family Tree after a lay-off had been able to do so," this statement constitutes "nothing more than a vague assurance." *See Price v. Pub. Serv. Co. of Colo.*, 1 F. Supp. 2d 1216, 1228 (D. Colo. 1998) (explaining that the employer's suggestions that if the plaintiff worked for them she would "have a job until [she ] retired" and that the company "did not have layoffs" were "general assurances of a secure job . . . which are neither promissory in nature nor sufficiently definite to be capable of judicial enforcement") (internal quotation marks omitted). There is no indication that Defendant intended to "enter into a bargain" by making this vague assurance to Plaintiff and thus, Plaintiff's reliance on this statement as an enforceable promise is misplaced.

With respect to Plaintiff's allegation that they would "consider her and save her applications for openings they expected in the future," this statement is similarly vague and too indefinite to give rise to an enforceable promise of future employment. *See Vasey,* 29 F.3d at 1464; *see also Geras v. Int'l Bus. Machines Corp.*, 638 F.3d 1311, 1315 (10th Cir. 2011) ("If the statement is merely a description of the employer's present policies or a forecast of the employee's likely career progression, it is neither a promise nor a statement that could reasonably be relied upon as a commitment.") (internal quotation marks omitted) (citing *Soderlun v. Pub. Serv. Co.*, 944 P.2d 616, 620 (Colo. App. 1997). Nothing indicates

that Plaintiff should have reasonably expected indefinite employment to arise from this statement. The very language of the statement that Defendant would "consider" Plaintiff indicates that this was not intended as a binding promise to guarantee indefinite employment. *See Soderlun*, 944 P.2d 616, 620 ("[T]he statement must either disclose a *promissory* intent or be one that the employee could reasonably conclude constituted a *commitment* by the employer.") (emphasis in original). Thus, this vague statement by Defendant is insufficient to warrant Plaintiff's contention that it constituted a binding promise.

Accordingly, the Court respectfully **recommends** that Plaintiff's breach of implied contract claim be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219.

## C.    Promissory Estoppel

Plaintiff's claim for promissory estoppel alleges that "she expected continued employment based on Defendant's stated official Kaleidoscope retention policy, as well as its oral promises and/or implied promises of continued employment and a practice of extending job retention to all of its employees," and that she reasonably relied on these promises to her detriment. *Second Am. Compl.* [#13] at 17-18. Defendant again argues that this claim should be dismissed because Plaintiff has failed to allege any special consideration. *Motion* [#31] at 11.

"In Colorado, promissory estoppel is available as a theory of recovery when breach of contract fails." However, the same standard for permanent employment that applies to breach of contract claims also applies to promissory estoppel claims. *See DeFranco*, 622 F.3d at 1306-07 (finding that summary judgment was properly entered in favor of the

employer on the plaintiff's promissory estoppel claim because he "did not provide any special consideration or express stipulation as to the length of employment"). As discussed above, Plaintiff has not asserted that any special consideration was given or that there was an "express stipulation as to the length of employment." Thus, Plaintiff's promissory estoppel claim similarly fails. Plaintiff's allegations are not sufficient to rebut the presumption of at-will employment.

Accordingly, the Court respectfully **recommends** that Plaintiff's promissory estoppel claim be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219.

### D.    Age Discrimination in Employment Act

Defendant argues that Plaintiff's ADEA claim should be dismissed because: (1) the allegations contained in the Second Amended Complaint [#13] are conclusory; (2) Plaintiff has failed to plead the necessary elements of an ADEA claim; (3) Plaintiff has not alleged she was qualified for the SSVF and SafeCare positions; (4) Plaintiff only expressed an interest, but did not apply, for the CFRT position, and has not alleged she was qualified for it; and (5) Plaintiff applied for the Douglas County Kinship Program after it had been offered to another individual. *See Motion* [#31] at 12-14**.** Plaintiff argues that: (1) her allegations are not conclusory; (2) she alleged that she was qualified for the SSVF and SafeCare positions; (3) she "disputes she has to apply formally for jobs; she can also request transfers and she asserted failure to transfer as an adverse action"; and (4) she did not apply "too late" for the Douglas County Kinship job. *See Response* [#39] at 12-15.

### 1.    Formal Application for CFRT Position

With respect to Defendant's argument that Plaintiff never applied for the CFRT

position, Plaintiff concedes that she "was not able to officially submit an application," but "disputes she has to apply formally for jobs; she can also request transfers." *See Motion* [#31] at 14; *Second Am. Compl.* [#13] ¶ 72; *Response* [#39] at 14. Additionally, Plaintiff alleges that she "clearly stated she would like this CFRT position and agreed with Ms. Hixon that it was a good fit." *Second Am. Compl.* [#13] ¶ 68.

"Employment discrimination law does not require that a plaintiff formally apply for the job in question. Rather, the law requires that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992). Plaintiff's allegations sufficiently allege that she "might [have] reasonably be[en] interested" in the CFRT position. *See id.* Thus, Defendant's argument fails.

### 2. Late Application to Douglas County Kinship Program

Defendant argues that when Plaintiff applied to the Douglas County Kinship Program, the position already had been offered to another individual. *Motion* [#31] at 14. Defendant cites to an email attached to the Motion [#31] in support. *Motion* [#31] at 14. Plaintiff disputes that she applied after the position had already been offered to someone else and contends that when she applied on February 9, 2015, "the pre-selected applicant was not hired." *See Reply* [#39] at 15. Because Plaintiff does not refer to this email in the Second Amended Complaint [#13] and it is not central to her claims, the Court will not consider the email attached to the Motion. *See Stanton*, 2012 WL 4466555, at *2. Thus, Defendant's argument fails.

### 3. Prima Facie Case

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove a prima facie case of age discrimination, a plaintiff must show that she was: "(1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person."[4] *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). Ultimately, in order to prevail on her claim, Plaintiff will have to "prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.,* Inc., 557 U.S. 167, 178 (2009); *Backus v. Univ. of Colo.*, No. 15-cv-01340-REB-NYW, 2015 WL 10490565, at *6 (D. Colo. Dec. 14, 2015) ("An employer may not be held liable under the ADEA unless she establishes that age is the factor that made the difference in the employer's action.").

With respect to the first prima facie element, the ADEA's prohibition "is limited to individuals who are at least forty years of age." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996) (internal quotation marks omitted). It is undisputed that

---

[4] The Tenth Circuit has explained the requirements for a prima facie case of age discrimination under the ADEA in two related but slightly different ways. As described in *Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 366 (10th Cir. 2010), a plaintiff is required to show that she "was doing satisfactory work and was discharged." However, in *Jones v. Okla. City Public Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010)*,* the Tenth Circuit stated that a Plaintiff is required to show that she "was qualified for the position at issue" and "suffered an adverse employment action." Nonetheless, the two tests have been used interchangeably as equivalents. See *E.E.O.C. v. RadioShack Corp.*, 10-cv-02365-LTB-BNB, 2012 WL 2298403, at *4 (D. Colo. June 18, 2012) ("Other Tenth Circuit cases clarify that the formulations in *Jones* and *Kosak* are equivalent and interchangeable.") (citing *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995)); *see also Roach v. Safeway, Inc.*, No. 12-cv-01239-RBJ, 2013 WL 1685837, at *3 n.2 (D. Colo. Apr. 18, 2013) ("The Tenth Circuit employs several related but slightly different iterations of the test for establishing a prima facie case of discrimination under the ADEA.").

Plaintiff was sixty-eight and sixty-nine years old when the events described in the Second Amended Complaint [#13] occurred.  *See Second Am. Compl.* [#13] at 2.  Thus, Plaintiff has met the first element.

With respect to the second element, in order to satisfy this element at this stage of the case, Plaintiff "need only establish that [she] does not suffer from 'an absolute or relative lack of qualifications.'"  *See Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1274 (10th Cir. 2006) (quoting *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000)).  Plaintiff contends that she "earned an MSW in Social Work in 1985 and a Ph.D. in Social Work in 2012," has worked as a social worker for over twenty years, worked for Defendant for approximately seven years, and has "always received adequate performance evaluations."  *See Second Am. Compl.* [#13] at 3.  Further, in response to Defendant's argument that she was not qualified for the SSVF and SafeCare positions, Plaintiff states that "the interdepartmental transfers show the social workers were cross-qualified among SSVF, SafeCare and kinship programs."  *See Reply* [#39] at 14. Accordingly, Plaintiff's allegations are sufficient to satisfy the second element.  *See Daviss v. Sch. Dist. Number 1*, No. 14-cv-00795-CMA-KMT, 2015 WL 5315615, at *3-4 (D. Colo. Aug. 24, 2015) (finding that the plaintiffs' allegations that they were "qualified for their positions" were sufficient to survive a motion to dismiss when they alleged that they had "been employed as auditors with the [Defendant] for many years. . . . [and] were able to do their jobs for their entire time . . . without being licensed CPAs").  Thus, Plaintiff has met the second element.

With respect to the third element, "to be an adverse action, the employer's conduct must be materially adverse to the employee's job status."  *See Wells v. Colo. Dep't of*

*Transp.*, 325 F.3d 1205, 1212-13 (10th Cir. 2003) (internal quotation marks omitted). Defendant does not appear to dispute that Plaintiff was adversely affected by Defendant's employment decision to not transfer or hire Plaintiff for other positions within the company. *See Second Am. Compl.* [#13] at 13; *Motion* [#31] at 12. Thus, it is undisputed that Plaintiff was affected by an adverse employment decision and Plaintiff has met the third element.

As to the fourth element, i.e., whether Plaintiff was replaced by a younger person, while Plaintiff avers that other employees were hired for positions for which she was qualified, and that "younger" employees were routinely transferred to other positions, she does not specify the ages of these employees. At this early stage of the litigation, however, alleging that the employees who were transferred or hired were "younger" is sufficient. *Compare Adenowo v. Denver Pub. Sch.*, No. 14-cv-02723-RM-MEH, 2015 WL 4511924, at *3 (D. Colo. June 17, 2015) (finding that Plaintiff's allegations that he was replaced by a "young" employee, without specifying the specific age, was sufficient to survive a motion to dismiss) *with Velez v. Infusion*, No. 15-cv-01174-MSK-MJW, 2016 WL 1275704, at *8 (D. Colo. Feb. 25, 2016) (dismissing the plaintiff's ADEA claim after the defendants' motion was converted to a motion for summary judgment and the Court considered supplemental materials submitted by plaintiff, because he still "offer[ed] no information about the ages of any of his colleagues and offer[ed] no facts to support a prima facie case of age discrimination"). Further, Plaintiff alleges that she is "the only Family Tree employee in good standing who was not retained other than those who chose to leave voluntarily after they were laid off," that "[y]ounger employees are routinely transferred to new positions when they are laid off," and specifically alleges seven instances in which transfers occurred. *See Second Am. Compl.* [#13] ¶¶ 26, 53-60. Thus, the Court finds that Plaintiff

has satisfied the fourth element.

Accordingly, the Court finds that Plaintiff has sufficiently alleged a prima facie case of age discrimination.

## IV. Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **RECOMMENDED** that Defendant's Motion [#31] be **GRANTED in part and DENIED in part**. The Court **recommends** that the Motion [#31] be **granted** to the extent the Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims be **DISMISSED with prejudice**. The Court **recommends** that the Motion [#31] be **DENIED** regarding Plaintiff's ADEA claim.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 28, 2018

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge