IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-03143-CMA-KLM

BETSY A. HAY,

    Plaintiff,

v.

FAMILY TREE, INC.,

    Defendant.

---

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

The matter is before the Court on Defendant Family Tree, Inc.'s Motion for Summary Judgment, in which Defendant requests that the Court enter summary judgment in its favor on Plaintiff Betsy A. Hay's sole remaining claim against it. (Doc. # 113.) For the reasons described below, the Court denies in part and grants in part Defendant's Motion for Summary Judgment.

### I.    BACKGROUND

United States Magistrate Judge Kristen L. Mix provided a thorough recitation of the factual and procedural background of this matter in her Recommendation on Defendant's Second Motion to Dismiss (Doc. # 59), which this Court in turn affirmed and adopted on March 20, 2018 (Doc. # 60). The Recommendation is incorporated herein by reference, and the facts will be repeated only to the extent necessary to address Defendant's Motion for Summary Judgment.

Plaintiff has a Masters degree and a doctorate in social work and has worked in the field for more than twenty years. (Doc. # 13 at 3.) Defendant is a private, non-profit organization "providing multiple issue family assistance." (*Id.* at 2.)

Defendant employed Plaintiff from November 12, 2007, through November 14, 2014. (Doc. # 75 at 1.) Plaintiff was 61 years old at the time Defendant hired her and 68 years old when it laid her off. (*Id.*) During her seven years with Defendant, Plaintiff worked as a case manager in the Arapahoe County Kinship Family Stability Program. (*Id.*) In June 2014, Plaintiff was informed that Arapahoe County's contract with Defendant would expire in August 2014 and that the Arapahoe County Kinship Family Stability Program would thus end. (Doc. # 13 at 3.) Defendant laid Plaintiff off from permanent employment on August 30, 2014. (*Id.*)

For two and half months after Plaintiff was laid off, Defendant employed Plaintiff on a temporary basis. (*Id.* at 4.) During her temporary employment, Plaintiff worked on Defendant's Supportive Services for Veterans' Families Program ("SSVF") and on the Adams County Kinship TANF Stable Families Program. (*Id.*) On November 11, 2014, Plaintiff submitted a letter of resignation to Defendant. (Doc. # 113 at 11; Doc. # 125 at 7.) The following day, she accepted an offer of employment from another entity, non-party Maple Star Colorado, with a start date of November 19, 2014. (*Id.*)

Plaintiff asserts that "in the last six months of her employment" with Defendant and subsequent to her separation from Defendant, she "sought transfers and applied for replacement jobs at [Defendants.]" (Doc. # 13 at 3.) Specifically, she alleges that she applied for but was not offered the following four jobs with Defendant (*id.* at 5–11):

2

i. **SSVF Program case manager position**: Defendant began advertising for a case manager position in its SSVF Program on September 3, 2014. (Doc. # 113 at 4.) While Plaintiff was doing work on the SSVF Program as a temporary employee in September 2014, she "requested a transfer to the SSVF" Program case manager position. (Doc. # 13 at 5.) Plaintiff contends that on or about September 22, 2014, she submitted an application for the position. (*Id.* at 6.) She asserts that on October 31, 2014, Defendant informed her that it had hired someone else for the SSVF Program case manager position and that her temporary, part-time position with the program would end. (*Id.*) Plaintiff alleges that Defendant hired a "much younger" woman. (*Id.*)

ii. **SafeCare home visitor positions**: Defendant began advertising for three SafeCare[1] home visitor positions on August 22, 2013. (Doc. # 113 at 6.) Plaintiff applied for the positions by email on August 27, 2013. (*Id.* at 7.) Three supervisors for Defendant interviewed Plaintiff for the position on September 11, 2014. (*Id.*) Two of those supervisors conducted a second-round interview with Plaintiff on September 17, 2014. (*Id.* at 8.) Plaintiff contends that "[a]ll three SafeCare [home visitor] positions were given to younger and less qualified applicants than [her]." (Doc. # 13 at 8.)

---

[1] Defendant states that "SafeCare® is a nationally recognized, evidence-based, structured in-home parent education program providing direct skills training to caregivers in the areas in the areas of parenting, home safety, and child health." (Doc. # 113 at 6.)

iii. **CFRT Program case manager position**: Plaintiff contends that, after her application for the SafeCare home visitor positions was rejected, a supervisor for Defendant told her that "a case manager position with the [Community Family Resource Team ("CFRT")] program . . . was coming up," that Plaintiff would be "a good fit in that job," that Plaintiff had "already interviewed" for the CFRT position, and that she (the supervisor) "would let [Plaintiff] know when it came open." (*Id.*) Plaintiff asserts that she was never told that the CFRT position was posted for applications and that she "was not able to officially submit an application" for it. (*Id.* at 9.) According to Plaintiff, the "CFRT position was given to . . . a younger, less experienced employee who did not have to apply for the position." (*Id.*)

iv. **Douglas County Kinship Program case manager position**: Defendant internally posted a position for a case manager for the Douglas County Kinship Program on February 3, 2015, and externally posted it on February 5, 2015. (Doc. # 113 at 11.) It is undisputed that Defendant offered the position to non-party Michelle Johnson on February 6, 2015. (Doc. # 113 at 12; Doc. # 13 at 11.) Plaintiff applied via email for the position on February 8, 2015. (*Id.*); *see also* (Doc. # 125 at 59.) Plaintiff contends that Ms. Johnson was "younger and less qualified" than her and that Ms. Johnson "was preselected and did not have to apply for the job." (Doc. # 13 at 11.)

Plaintiff brought suit against Defendant on December 12, 2016 (Doc. # 1), asserting three causes of action: (1) "disparate treatment discrimination and hostile

work environment based on age," in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623; (2) breach of contract or, alternatively, breach of implied contract; and (3) promissory estoppel (Doc. # 13 at 13–19). Plaintiff's second and third claims were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 20, 2018. (Doc. ## 59–60.) Plaintiff's sole remaining claim is that Defendant violated the ADEA because its "intentional discrimination by non-selection [for open positions] was motivated by age discrimination." (Doc. # 13 at 13–14.)

Defendant moved for summary judgment on November 20, 2018. (Doc. # 113.) It asserts that with respect to each of the four positions Plaintiff allegedly applied for and was rejected from, Plaintiff cannot prove a prima facie case of age discrimination. (*Id.* at 2.) Plaintiff argues otherwise in her Response, filed on December 20, 2018 (Doc. # 125), to which Defendant replied on January 10, 2019 (Doc. # 127).

## II. APPLICABLE LEGAL PRINCIPLES

### A. SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the

non-moving party—in the matter presently before the Court, in the light most favorable to Plaintiff.  *See id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.*  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor.  *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

**B.     ADEA CLAIM**

As mentioned, Plaintiff's sole remaining claim for relief is discrimination under the ADEA, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The protective provisions of the ADEA "are limited to individuals who are 40 or older, and were prompted by Congress' 'concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.'" *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291–92 (D. Colo. 2009) (quoting *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)). The ADEA "requires employers 'to evaluate older employees . . . on their merits and not their age.'" *Id*. (quoting *Greene*, 98 F.3d at 557). "It does not, however, require employers to evaluate employees perfectly, fairly, or even rationally—employers are free to exercise their sound business judgment in personnel matters." *Id.* (citing *Adamson v. Multi Cmty. Diversified Serv., Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008)).

To prevail on a claim under the ADEA, a plaintiff must prove by a preponderance of the evidence (direct or circumstantial) that age was the "'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176–78 (2009); *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). The "but for" causal standard does "not require[ ] [plaintiffs] to show that age was the sole motivating factor in the employment decision." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1277–78 (10th Cir. 2010) (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256,

1266 (10th Cir. 2010)). Instead, a plaintiff has a claim under the ADEA if she can prove that age was the determinative factor behind the employer's adverse action, even if other factors also motivated the employer to take the adverse action against the plaintiff. *Id.*; *accord Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (requiring an ADEA plaintiff to show that age had a "determinative influence on the outcome" of her employer's decision-making process).

Where there is no direct evidence of discrimination, courts in this jurisdiction evaluate an ADEA claim using the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 365 (10th Cir. 2010). At the first step of that framework, a plaintiff bears the initial burden of setting forth a prima facie case of discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). A plaintiff can establish a prima facie case of discrimination under the ADEA by establishing that: "1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998). Where the plaintiff fails to establish a prima facie case of age discrimination, the court need not reach the second and third steps of the framework and may grant summary judgment in favor of the defendant. *Kosak*, 400 F. App'x at 365 (citing *Adamson*, 514 F.3d at 1146).

At the second step, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment

action. *Jones*, 617 F.3d at 1278 (citing *McDonnell Douglas*, 411 U.S. at 802). "Once this is done, the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.'" *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

At the third step, "should the defendant carry [that] burden [of production], the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Kosak*, 400 F. App'x at 365 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In the context of a motion for summary judgment, a plaintiff must present "specific facts significantly probative to support an inference that [the defendant's] proffered justifications were a pretext for discrimination." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006) (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1454 (10th Cir. 1994)). Pretext may be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Bryant*, 432 F.3d at 1125 (quoting *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997)). "Once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, [the Court] presume[s] the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." *Id.* at 1126.

## III. ANALYSIS

Plaintiff alleges that Defendant discriminated against her based on her age and thereby discriminated against her under the ADEA when they did not hire her for any of the four previously described positions. *See* (Doc. # 13 at 5–12.) The Court addresses each position in turn. In light of the Court's conclusion that Plaintiff has raised genuine issues of material fact with respect to Defendant's decision not to hire her for two of these positions, Defendant is not entitled to summary judgment of Plaintiff's ADEA claim.

### A. PLAINTIFF PROVIDES SIGNIFICANTLY PROBATIVE EVIDENCE REGARDING TWO POSITIONS THAT WOULD SUPPORT A VERDICT IN HER FAVOR

#### 1. SSVF Program case manager position

Defendant argues that, with respect to its hiring of a SSVF Program case manager, Plaintiff cannot establish the second element of a prima facie case of an age discrimination claim because she "never applied for that position." (Doc. # 113 at 13.) It states that, despite Plaintiff's assertion that she asked to be transferred into the position and then applied for it on or about September 22, 2014, *see* (Doc. # 13 at 5–6), Defendant "does not have a record of Plaintiff's application for the SSVF [Program] case manager position" and that Plaintiff's supervisor at the time "has no recollection of her expressing interest in the position, nor do her fellow employees" (Doc. # 113 at 13).

The second element of a prima facie case of discrimination under the ADEA is that the plaintiff "suffered an adverse employment action." *Sanchez*, 164 F.3d at 531. Though the Court of Appeals for the Tenth Circuit "liberally defines the phrase 'adverse

employment action,'" *id.*, the action must "constitute[] a significant change in employment status, such as hiring, firing, [or] failing to promote," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). To establish an adverse employment action in the hiring context, the plaintiff "must show, among other things, that she applied for—or at least sought—the position at issue." *Bennet v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001) (citing *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251–52 (10th Cir. 1992), *overruled in part on other grounds as explained in Boyer v. Cordant Tech., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003). Though the law "does not require that a plaintiff formally apply for the job in question," it does require "either that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." *Whalen*, 974 F.2d at 1251–52.

The Court concludes that Plaintiff has set forth specific facts showing that there is a genuine issue with respect to whether she applied or otherwise sought the SSVF Program case manager position and, thus, whether she can establish the second element of a prima facie case of age discrimination. In contradiction to Defendant's assertion that "its employees have no recollection of Plaintiff applying for the SSVF [Program case manager] position" (Doc. # 113 at 5), another case manager for Defendant, Sherry Stedman, testified in her deposition that she "kn[e]w that [Plaintiff] expressed interest . . . [i]n the case management position in SSVF" and that Plaintiff's supervisor "told her no" in an email (Doc. # 113-1 at 313–14). Plaintiff also states that she "has a USB drive that shows she prepared a resume and cover letter for SSVF in

11

2014." (Doc. # 125 at 23.) Viewing Ms. Stedman's testimony and Plaintiff's assertions in the light most favorable to Plaintiff, a rational finder of fact could determine that Plaintiff applied for the SSVF Program case manager position and, thus, suffered an adverse employment action in not being hired for the position.

Defendant does not take issue with the other elements of Plaintiff's prima facie case as to this position, nor does it assert that it had a legitimate, nondiscriminatory reason for not hiring Plaintiff for the position. Accordingly, Defendant's argument that it is entitled to summary judgment on Plaintiff's ADEA claim to the extent is based upon the SSVF Program case manager position fails.

2. SafeCare home visitor positions

As to the three SafeCare home visitor positions, Defendant argues that Plaintiff has failed to establish the third element of a prima facie case of age discrimination—that she was qualified for the positions at issue. (Doc. # 113 at 15.) It asserts that Plaintiff was not qualified for the SafeCare positions "based on her undisputed inability to adhere to the SafeCare model during her second interview" and her statement that "she would have a hard time following the SafeCare model." (*Id.* at 15, 8–9.)

To establish the third element of a prima facie case of age discrimination, the Tenth Circuit "ha[s] long held" that a plaintiff can establish that she was qualified for the position at issue "by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time." *Mattera v. Gambro*, 94 F. App'x 725, 728 (10th

Cir. 2004) (quoting *McDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991)). Relevant here:

> The fact that [a] plaintiff insist[s] her work was satisfactory is sufficient to satisfy this element of a prima facie case. Thus, "the employer's subjective reasons are not properly considered at the prima facie stage, and should instead be considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination."

*Id.* (citing *Beaird v. Seagate Tech., Inc.*, 143 F.3d 1159, 1166 n.3 (10th Cir. 1998); quoting *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997)).

Plaintiff asserts that "she was a qualified applicant for the SafeCare position" based on her "20 years of experience in child welfare" and "over 25 years of post-Master of Social Work Degree employment in social work positions, all dealing with diverse impoverished marginalized clients." (Doc. # 125 at 12.) This is sufficient to satisfy the third element of her prima facie case of age discrimination with respect to the SafeCare home visitor positions. *See Mattera*, 94 F. App'x at 728.

The Court *sua sponte* considers Defendant's argument that Plaintiff was not qualified for the SafeCare positions for purposes of the second step of the *McDonnell Douglas* framework—that is, it considers whether Defendant's argument regarding Plaintiff's qualifications constitutes a legitimate, nondiscriminatory reason for taking the adverse employment action of not hiring her as a SafeCare home visitor. *See Thomas*, 111 F.3d at 1510. Defendant describes that during Plaintiff's second interview for the SafeCare positions, she "failed to follow the [SafeCare] model" during a role play in which she was tasked with "creating a healthy meal plan with a client and demonstrat[ing] the SafeCare model." (Doc. # 113 at 8.) Defendant also cites Plaintiff's

13

deposition testimony that she and her interviewers "chatted . . . on how it would be hard for somebody who had as much experience as [she] did to . . . follow a pre-stamped order of things," like the SafeCare model requires. (*Id.* at 9); *see* (Doc. # 113-1 at 54.) The Court is satisfied that Defendant's subjective opinion that Plaintiff would be unable to follow the SafeCare model is a sufficiently legitimate and nondiscriminatory reason for not hiring her as a SafeCare home visitor. *See Bryant*, 432 F.3d at 1125 (holding that failure "to meet the performance criteria established for [a] position" and other forms of "poor performance" are "quintessentially legitimate and nondiscriminatory reason[s] for termination."). Defendant has met its burden at the second step of the *McDonnell Douglas* framework.

Thus, Plaintiff's ADEA claim—to the extent is founded in the SafeCare home visitor positions—hinges on the third step of the framework, whether she has put forth evidence establishing a dispute of fact as to whether Defendant's stated reason for not hiring her to be a SafeCare home visitor was pretextual. Plaintiff asserts that Defendant's employees who interviewed her "made contradictory false excuses why [she] allegedly did not follow the SafeCare model" during the second interview and that these "false excuses" "show[] pretext." (Doc. # 125 at 19–20.) She explains that the interviewers had shifting explanations for what was purportedly wrong with her handling of cultural considerations and questions about inclusivity during the role play and mischaracterized her answers during another portion of the interview. (*Id.* at 19–21.) Plaintiff also asserts that the interviewers "demonstrated striking age-related animus" against her by making "ageist statement[s]" during the interview. (*Id.* at 18–19.)

Viewing the evidence in the light most favorable to Plaintiff, the inconsistencies in Defendant's interviewers' accounts could enable "a reasonable factfinder" to "rationally find" Defendant's proffered reason for not hiring Plaintiff to be "unworthy of credence" and to "hence infer that [Defendant] did not act for the non-discriminatory reason." *See Bryant*, 432 F.3d at 1125. Because Plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of Defendant's nondiscriminatory reason, the Court must "presume the jury could infer that [Defendant] acted for a discriminatory reason and must deny summary judgment." *Id.*

For these reasons, to the extent that Plaintiff's ADEA claim is based upon the SafeCare home visitor positions, the Court holds that Defendant is not entitled to summary judgment.

**B.  PLAINTIFF FAILS TO ESTABLISH GENUINE ISSUES OF MATERIAL FACT AS TO THE TWO OTHER POSITIONS**

1. <u>CFRT Program case manager position</u>

Defendant argues that, with respect to Plaintiff's claim that she was denied employment as a CFRT Program case manager, Plaintiff cannot establish a prima facie case of age discrimination because it "did not have an open case manager position in the CFRT Program in August 2014," "no job posting was made," and a potential "CFRT position never materialized." (Doc. # 113 at 10.) "Since there was no position to fill," Defendant asserts, it "could not have discriminated against Plaintiff on the basis of her age." (*Id.* at 16.) Plaintiff concedes that Defendant did not have an open case manager position in the CFRT Program in the late summer and early fall of 2014, did not post any

job announcement, and did not later hire a CFRT Program case manager. (Doc. # 125 at 7) (admitting Defendant's statement of undisputed facts).

The Court concludes that Plaintiff fails to make a prima facie showing of age discrimination with respect to not being hired by Defendant as a CFRT Program case manager. *See Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 732 (10th Cir. 2014). "It is indeed difficult . . . to understand how [Plaintiff] can maintain that she was the victim of discrimination due to [Defendant's] refusal to" hire her as a case manager for the CFRT Program "when such a position did not even exist." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997). Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADEA claim to the extent it is based on Defendant's failure to hire her as a CFRT Program case manager.

2. <u>Douglas County Kinship Program case manager position</u>

As the Court recounted above, Plaintiff applied via email for the Douglas County Kinship Program case manager position on February 8, 2015, two days after Defendant had offered it to Ms. Johnson. *See* (Doc. # 113 at 12; Doc. # 13 at 11.) Plaintiff does not dispute these facts. (Doc. # 125 at 7–8.) In light of these undisputed facts, Defendant argues that Plaintiff "cannot show she applied for an available position," a prerequisite of the second element of a prima facie age discrimination claim. (Doc. # 113 at 16–17.)

The Court agrees with Defendant that Plaintiff fails to make a prima facie case of age discrimination because the Douglas County Kinship Program case manager position "was not available when Plaintiff applied for it," as "someone else held already

16

been offered the position." (Doc. # 113 at 19.) *See Kenfield*, 557 F. App'x at 732; *Sprague*, 129 F.3d at 1362. Defendant is entitled to summary judgment on Plaintiff's ADEA claim to the extent that it is based on Defendant's failure to hire her as a Douglas County Kinship Program case manager.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion for Summary Judgment. (Doc. # 113.) It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is DENIED IN PART to the extent that Plaintiff's ADEA claim is based on her claims regarding the SSVF Program case manager position and the SafeCare home visitor positions. It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART to the extent that Plaintiff's ADEA claim is based on the CFRT Program case manager position and the Douglas County Kinship Program case manager position. These arguments cannot serve as the basis for Plaintiff's claim against Defendant.

DATED: May 16, 2019

BY THE COURT:

*[signature: Christine M. Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge

17